**SO ORDERED.**

**SIGNED this 25 day of January, 2012.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

**IN RE:**

| | |
|---|---|
| **CHRISTOPHER WELLS HARPER and JANICE DANIELLE HARPER,** | **CASE NUMBER: 10-07510-8-JRL** |
| | **CHAPTER 7** |
| DEBTORS. | |
| | |
| **JAMES B. ANGELL, CHAPTER 7 TRUSTEE FOR CHRISTOPHER WELLS HARPER and JANICE DANIELLE HARPER,** | |
| Plaintiff, | |
| | **ADVERSARY PROCEEDING** |
| vs. | **NO.   11-000167-8-JRL** |
| **WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF SOUNDVIEW HOME LOAN TRUST 2007-OPT-1, ASSET-BACKED SECURITIES, SERIES 2007-OPT1,** | |
| Defendant. | |

**ORDER**

This matter came before the court on the defendant's motion to dismiss. A hearing was

held on November 21, 2011, in Raleigh, North Carolina to consider the motion.[1]

## BACKGROUND

The debtors filed for relief under chapter 7 of the Bankruptcy Code on September 15, 2010. The present adversary proceeding arises out of a 2007 loan transaction that was secured by certain real estate of the debtors.

On March 13, 2007, Mr. Christopher W. Harper ("male debtor") executed a promissory note in the amount of $170,000.000 for the benefit of Option One Mortgage Corporation ("note"). On that same day, both debtors executed a deed of trust for the benefit of Option One Mortgage Corporation ("deed of trust"), pledging the real property located at 310 Ashford Avenue, Wilmington, North Carolina ("the property") as collateral for the male debtor's obligation under the note.[2] The defendant, Well Fargo, N.A., as trustee for Certificate Holders of Soundview Home Loan Trust 2007-OPT-1, Asset-Backed Securities, Series 2007-OPT1 ("Wells Fargo"), is the current holder of the underlying note and also holds the beneficial interest under the deed of trust.

The male debtor defaulted on his obligations under the note, and a substitute trustee was appointed on July 31, 2009. Subsequently, pursuant to the terms of the deed of trust, the substitute trustee initiated foreclosure proceedings against the property. In April 2010, the property was auctioned under the power of sale clause contained in the deed of trust. On May 17, 2010, the substitute trustee executed a trustee's deed, conveying the property to Wells Fargo

---

[1] Following the hearing, the parties continued to brief the relevant issues extensively. The last memorandum was submitted to the court on December 7, 2011.

[2] The deed of trust was recorded on March 14, 2007 at Book 5154, Page 808, in the Office of the Register of Deeds of New Hanover County.

as the high bidder at the sale ("trustee's deed"). The trustee's deed was recorded on the following day.[3]

Sometime thereafter, the substitute trustee was notified by the New Hanover County Clerk of Court ("Clerk") that a notice of sale was not included in the foreclosure file. In response, the substitute trustee moved the Clerk to set aside the foreclosure sale. On August 17, 2010, the Clerk entered an order setting aside the foreclosure sale. Wells Fargo then transferred the property to the male debtor by quitclaim deed, which was recorded on September 2, 2010 ("quitclaim deed").[4] The quitclaim deed purports to reinstate the deed of trust and re-encumber the property subject to the terms of the deed of trust.[5]

In the weeks that followed, the debtors filed for relief pursuant to chapter 7 of the Bankruptcy Code. The plaintiff-trustee commenced this adversary proceeding on May 16, 2011, alleging two claims in the alternative: (1) a claim to quiet title to the property, and (2) a claim to declare that the trustee's deed to the defendant is an avoidable fraudulent transfer. On July 27,

---

[3] The trustee's deed was recorded at Book 5486, Page 1586, in the Office of the Register of Deeds of New Hanover County.

[4] The quitclaim deed was recorded at Book 5508, Page 1442, in the Office of the Register of Deeds of New Hanover County.

[5] Specifically, the quitclaim deed provides:
THE PURPOSE OF THIS QUITCLAIM DEED IS TO RESCIND THE EFFECT OF THAT CERTAIN TRUSTEE'S DEED RECORDED ON MAY 18, 2010 IN BOOK 5486 PAGE 1586, New Hanover PUBLIC REGISTRY AND TO RESTORE THE STATUS QUO ANTE, MEANING THAT THIS CONVEYANCE IS SUBJECT TO, WITHOUT LIMITATION, THAT CERTAIN DEED OF TRUST RECORDED ON MARCH 14, 2007 IN BOOK 5154, PAGE 808, New Hanover PUBLIC REGISTRY[.] FURTHER, THIS CONVEYANCE IS MEANT TO EFFECTUATE THAT CERTAIN ORDER ENTERED IN New Hanover COUNTY 09sp950 RESCINDING THE FORECLOSURE SALE.

2011, Wells Fargo filed the present motion to dismiss.

## STANDARD OF REVIEW

A pleading which states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008.  In determining whether the plaintiff has failed to state a claim upon which relief can be granted, the court must accept as true all pleaded allegations and view the complaint in the light most favorable to the plaintiff.  Hatfill v. New York Times Co., 416 F.3d 320, 329 (4th Cir. 2005).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal,129 S. Ct. 1937, 1949 (2009). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as adopted by the Federal Rules of Bankruptcy Procedure, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (2009) (citations and quotations omitted).

Heightening pleading requirements under the Federal Rules of Civil Procedure, the Supreme Court held that a statement showing entitlement to relief "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. at 1949.  A claim is facially plausible when the facts alleged in the complaint allow the court to draw a "reasonable inference" that the defendant is liable for the alleged misconduct.  Id.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'— 'that the pleader is entitled to relief.'" Id. at 1950 (citation

omitted).

## DISCUSSION

The plaintiff's claims are pled in the alternative. First, the plaintiff claims a right to have title to the property quieted, pursuant to N.C. Gen. Stat. § 41-10, to reflect that the deed of trust does not encumber the property, as the property was validly conveyed to the male debtor by the quitclaim deed. However, if it is determined that the transfer of property to the male debtor via the quitclaim deed was not a valid conveyance, the plaintiff brings an alternative action against the defendant to declare that the trustee's deed to Wells Fargo is avoidable as a fraudulent transfer pursuant to 11 U.S.C. § 548, and therefore, Wells Fargo is liable to the trustee on behalf of the bankruptcy estate for the recovery of the property, or the value of the property, pursuant to 11 U.S.C. §§ 550, 551. Wells Fargo moved the court to dismiss the plaintiff's complaint on the grounds that it fails to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[6]

**A. Action to quiet title**

There are essentially three issues of law presented by the plaintiff's quiet title action: (1) whether the Clerk had authority to set aside the foreclosure sale and vacate the trustee's deed that was recorded following the sale; (2) what is the legal effect of the quitclaim deed from Wells Fargo to the male debtor; and (3) does the presumption of acceptance apply to the conveyance of the quitclaim deed.

**1. Clerk's authority to set aside the foreclosure sale and vacate the trustee's deed**

---

[6] This rule is made applicable in this adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

In support of its motion to dismiss, Wells Fargo argues that the Clerk has authority to set aside the foreclosure sale, when—as is the case here—the basis for such relief is a procedural defect. Although this authority is not explicitly granted by statute, Wells Fargo argues that Rule 60 of the North Carolina Rules of Civil Procedure inherently authorizes the Clerk to take such action. Furthermore, Wells Fargo argues that the effect of the Clerk's order setting aside the foreclosure was to void the trustee's deed, and therefore, the property was never conveyed to Wells Fargo.

The plaintiff contends that the Clerk was without authority to set aside the foreclosure sale or vacate the trustee's deed, as these are equitable actions over which the clerk has no jurisdiction or authority. The plaintiff cites various authorities for the proposition that the clerk of the superior court "has no common law or equitable jurisdiction. The clerk is a court 'of very limited jurisdiction—having only such jurisdiction as is given by statute.'" Pruden v. Keemer, 262 N.C. 212, 216, 136 S.E.2d 604, 607 (1964) (citing Moore v. Moore, 224 N.C. 552, 555, 31 S.E.2d 690, 692 (1944)); see Johnston Cnty. v. Ellis, 226 N.C. 268, 38 S.E.2d 31 (1946). Because there is no statute explicitly granting the Clerk authority to set aside a foreclosure sale or vacate a trustee's deed, the plaintiff argues that such authority can lie only with the superior court.

The court finds that the Clerk had inherent authority to set aside the foreclosure sale based on the lack of notice of sale. The court agrees with Wells Fargo that such authority is based in Rule 60 of the North Carolina Rules of Civil Procedure. Rule 60(b) authorizes the court to "relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; . . . or (6) Any other

6

reason justifying relief from the operation of judgment." N.C. R. Civ. P. 60(b)(1), (6).[7] Rule 60(c) provides that "[t]he clerk may, in respect of judgments rendered by himself, exercise the same powers authorized in sections (a) and (b). Where such powers are exercised by the clerk, appeals may be had to the judge in the manner provided by law." N.C. R. Civ. P. 60(c). In this case, the lack of notice qualifies as both a mistake and a substantial reason justifying relief from the final order of sale entered by the Clerk.

However, while the Clerk had the inherent authority to set aside the foreclosure sale, the court finds that the Clerk did not have the authority to set aside or vacate the trustee's deed. An action to set aside a deed is an equitable action, see Newman Machine Co. v. Newman, 275 N.C. 189, 166 S.E. 2d 63 (1969), and as such, it may only be raised in the superior courts, see In re Smith, 200 N.C. 272, 274, 156 S.E. 494, 495 (1931) ("[T]he Superior Courts became the successors of the courts of equity, having their jurisdiction and exercising their equitable powers unless restrained by statute. The clerk of the superior court is not given the jurisdiction of a court of equity.") (internal citations omitted). In this case, the Clerk's order to set aside the foreclosure sale could not have rendered the trustee's deed void, as the Clerk has no authority to undo the deed.[8] Even if this were not the case, the order entered here does not purport to rescind the deed or direct Wells Fargo to reconvey the property. Wells Fargo acted entirely on its own

---

[7] Rule 60(b) also provides that "[t]he motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered." In the present case, the substitute trustee filed a motion to set aside the foreclosure sale well within one year of the sale.

[8] Furthermore, under North Carolina law, defects in the foreclosure process do not void the foreclosure deed, rather it is only voidable. Edwards v. Hair, 215 N.C. 662, 664, 2 S.E.2d 859, 860 (1939) (citing Berry v. Boomer, 180 N.C. 67, 103 S.E. 914 (1920)).

volition.

There is further support for this proposition in the Procedures Manual for the Clerks of the Superior Courts of North Carolina. In regard to foreclosures under power of sale, it provides the following:

> Motion to set aside defective sale.
>
> a) Sometimes when there is a significant defect in a sale, the trustee may seek an order to set the sale aside and begin again.
>
> b) Be careful about setting aside a sale to cure a defect. **If the final report has been filed and the deed has been given to the purchaser, it is too late for the clerk to set aside the sale.**

Joan G. Brannon & Jan S. Simmons, North Carolina Clerk of Superior Court Procedures Manual § 130.43 (Clerk's Manual Comm. ed., 2003) (emphasis added). Based on the foregoing, the court finds that although the Clerk generally has the authority to set aside a foreclosure sale, the August 17, 2010 order had no effect on the trustee's deed which validly conveyed the property to Wells Fargo on May 17, 2010. Additional action by the superior court would have been required to rescind the deed.

**2. Legal effect of the quitclaim deed from Wells Fargo to the male debtor**

Because the trustee's deed conveyed the property to Wells Fargo, the court must determine what interest the quitclaim deed conveyed to the male debtor. Wells Fargo takes the position that the quitclaim deed transferred the property encumbered by the deed of trust. Wells Fargo contends that the plaintiff "cannot choose to ignore the clear language of the quitclaim deed that provides that it intended to restore the *status quo ante* and that the conveyance is subject to the [d]eed of [t]rust." Wells Fargo bases this argument on the language of N.C. Gen. Stat. § 39-1.1, which provides in relevant part: "In construing a conveyance . . . in which there

8

are inconsistent clauses, the courts shall determine the effect of the instrument on the basis of the intent of the parties as it appears from all of the provisions of the instrument." N.C. Gen. Stat. § 39-1.1(a).

The plaintiff contends that the deed of trust was extinguished by the conveyance of the trustee's deed to Wells Fargo, and that "[w]hile the quitclaim deed transferred the property back to the [male debtor], it cannot have the effect of reviving an otherwise satisfied [d]eed of [t]rust." The plaintiff argues that because no new deed of trust was executed and the male debtor lacked any intent to revive the foreclosed deed of trust, the male debtor now owns the property free of any encumbrances.

The court finds that the male debtor is the owner of the property by virtue of the quitclaim deed, free of the deed of trust. The deed of trust was extinguished when the trustee's deed conveyed the property to Wells Fargo, who was simultaneously the holder of the deed of trust. As this court noted, "when the holder of a deed of trust also becomes the owner of that which is secured, the doctrine of merger invalidates the deed of trust." In re Carpenter, No. 09-03768-8-SWH, 2010 Bankr. LEXIS 647, at *5 (Bankr. E.D.N.C. Mar. 2, 2010); see Washington Furniture Co. v. Potter, 188 N.C. 145, 146, 124 S.E. 122, 123 (1924) ("It is undoubtedly the general rule of law that, where one who holds a mortgage on real estate becomes the owner of the fee, and the two estates are thus united in the same person, ordinarily the former estate merges in the latter.") (citations omitted). After merger took place and the deed of trust was extinguished, the deed of trust needed to be again executed by the debtors to be effective under North Carolina law. See In re Mills, 68 N.C. App. 694, 695, 315 S.E.2d 716, 717 (1984) (citing New Home Building Supply Co. v. Nations, 259 N.C. 681, 131 S.E.2d 425 (1963)).

While N.C. Gen. Stat. § 39-1.1(a) does instruct the court to resolve "inconsistent clauses" from the "intent of the parties from all the provisions of the instrument," it in no way allows a party to unilaterally resuscitate an extinguished deed of trust, even if the instrument evidences that grantor had such an intention. Furthermore, in this case, there are no inconsistent clauses in the quitclaim deed to resolve, and there is no evidence—in the provisions of the quitclaim deed or otherwise—supporting that the male debtor intended to re-encumber the property.[9]

Essentially, Wells Fargo attempted to engage in self help, which in this case, they had no authority to do. By foregoing the proper judicial procedures applicable to obtaining equitable relief, Wells Fargo chose to forego the protections that would have been afforded by the judicial process. Therefore, the court finds that the quitclaim deed had the legal effect of transferring the property to the debtor, free and clear of the deed of trust or any other encumbrances.

### 3. Presumption of acceptance

"Where a deed is executed and recorded, it is presumed that the grantee therein will accept the deed made for his benefit. This is so, although the transaction occurs without the grantee's knowledge. Such presumption will prevail in the absence of evidence to the contrary." Corbett v. Corbett, 249 N.C. 585, 590, 107 S.E.2d 165, 170 (1959) (citations omitted). However, "[n]o presumption of acceptance would arise . . . [where] a deed imposes affirmative obligations on the grantee. Messer v. Laurel Hill Assoc., 93 N.C. App. 439, 444–445, 378 S.E.2d 220, 224 (1989) (citing Beaver v. Ledbetter, 269 N.C. 142, 152 S.E.2d 165 (1967)).

In this case, it is undisputed that presumed acceptance is the only plausible theory of

---

[9] In fact, the male debtor was unaware of the existence of the quitclaim deed until after the debtors filed their bankruptcy petition.

acceptance. Both parties also acknowledge that the quitclaim deed was properly executed and recorded, and that the deed was made for the benefit of the male debtor. However, the parties dispute whether or not the language attempting to reinstate the deed of trust imposes affirmative obligations on the male debtor. Wells Fargo argues that the encumbering of the property imposes an affirmative obligation on the male debtor, and therefore, the presumption of acceptance does not apply. With no presumption of acceptance, the plaintiff must allege acceptance of the quitclaim deed, which the plaintiff failed to do. On the other hand, the plaintiff contends that simply reciting that a deed is subject to an otherwise extinguished deed of trust imposes no affirmative obligation on the male debtor, and therefore, the normal rule of presumed acceptance applies in this case.

The court finds that the presumption of acceptance applies to the transfer of the quitclaim deed. As discussed above, because the language purporting to subject the quitclaim deed to an extinguished deed of trust is without legal effect, the property conveyed to the male debtor free of encumbrances. That being so, the quitclaim deed imposes no affirmative obligation on the debtor, and the presumption of acceptance applies.[10]

**B. Fraudulent transfer**

In addition to the action to quiet title, the plaintiff-trustee alternatively seeks to avoid the trustee's deed as a fraudulent transfer, pursuant to 11 U.S.C. § 548(a)(1)(B). Wells Fargo

---

[10] The court questions whether a deed of trust qualifies as imposing an affirmative obligation on the grantee. See Whetsell v. Jernigan, 291 N.C. 128, 229 S.E.2d 183 (1976) (find that building a church on the conveyed property qualifies as an affirmative obligation); Beaver v. Ledbetter, 269 N.C. 142, 152 S.E.2d 165 (1967) (assumption of an underlying mortgage); Messer v. Laurel Hill Assoc., 93 N.C. App. 439, 378 S.E.2d 220 (1989) (building a road). However, because there was not a valid deed of trust, this issue is moot.

11

contends that the trustee failed to sufficiently plead allegations of constructive fraud. Section 548(a)(1)(B) allows the trustee to avoid transfers made within two years of the filing of the petition,

> in which the debtor "received less than reasonably equivalent value" and either (I) was or became insolvent on the date of the transfer; (II) became insufficiently capitalized following the transfer; (III) intended to incur debts that would be beyond its ability to repay; or (IV) made such transfer for the benefit of an insider under an employment contract and not in the ordinary course of business.

Angell v. Ber Care, Inc. (In re Caremerica, Inc.), 409 B.R. 737, 756 (Bankr. E.D.N.C. 2009) (citing 11 U.S.C. § 548(a)(1)(B)). "[Section] 548(a)(1)(B) claims must satisfy Rule 8(a) and contain a short and plain statement showing entitlement to relief. Under Iqbal, it follows that claims to avoid constructively fraudulent transfers must assert factual allegations which show that relief is plausible." Id.

The complaint alleges that "as evidenced by the Debtors' schedules . . . the Male Debtor was insolvent on the date the Trustee's Deed was recorded or became insolvent as a result of the Trustee's Deed." It also alleges that "[a]s a result of the procedural deficiencies in the foreclosure of the Property, . . . the Male Debtor received less than reasonably equivalent value in exchange for the Property as a result of the Trustee's Deed." However, the complaint provides no factual assertions to support these allegations—only "a formulaic recitation of the elements" of § 548(a)(1)(B). Iqbal, 129 S. Ct. at 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Specifically, there are no assertions as to the amount of the debt secured by the deed of trust, the value of the property, or the amount of Wells Fargo's bid at the foreclosure sale. In the absence of such factual assertions as to value, the trustee's claims based on constructive fraud fail to meet the Rule 8 pleading standard.

## CONCLUSION

Based on the foregoing, Wells Fargo's motion to dismiss the plaintiff's action to have the title to the property quieted is **DENIED**, and Well's Fargo motion to dismiss the plaintiff's action to avoid the trustee's deed as a fraudulent transfer is **ALLOWED**.

**END OF DOCUMENT**